We'll hear argument next in Case 15-866, Star Athletica v. Varsity Brands. Mr. Bursch. Thank you, Mr. Chief Justice, and may it please the Court. Congress did not intend to grant a century-long copyright monopoly in cheerleader uniform design, and there are three points that support that conclusion. First, by subjecting two-dimensional pictures and graphics, as well as sculptures, to Section 101's separability test, Congress made clear that two-dimensional and three-dimensional designs must be analyzed for separability. Second, under Section 101's text, the dispositive questions are twofold, whether the design features can be identified separately from the useful article's utilitarian aspects, and second, whether they can exist independently, that is, the design features do not add to or change the useful article's utilitarian aspects. Why in this case would we even need to get to any question of separability? What was submitted was a two-dimensional artwork. It may not be like Mondrian, but it is chevrons and other things. They're not submitting the cheerleader's uniform itself. They're not saying anything about the shape of the uniform, the cut of the uniform. They're just saying these zigzag designs, and you can choose from five different ones that are interchangeable, the design. So why isn't this a case of not part of the pictorial graphic element, is not part of the design of the cheerleader's uniform. It's superimposed on it. It's reproduced on it. It's applied to it. Burschelgauer There are two reasons, Justice Ginsburg. First, consider the example where you have a designer who designs a military uniform, and on that military uniform they design the best desert camouflage that's been ever designed in the history of the world. And they submit it to the Copyright Office, and they don't claim the design in the uniform. They only claim copyright in the design on the uniform. There's no question they would have the copyright in the design, but the courts would still look to see whether that adds to the utilitarian aspects of the uniform such that that design copyright holder could not prevent the military from producing a military uniform that uses that design. That's why it's so important to understand that in Section 101, not only two-dimensional or three-dimensional, but also two-dimensional designs are subject to separability. And there's a second reason, Justice Ginsburg. What you're referring to generally is kind of the area of fabric design. And a good example of fabric design is the flowers on the fabric in the folio impressions case that we reprint on page 7 of our reply brief. And those flowers, you could expand the design, you could contract the design, you could make any article of clothing out of it whatsoever, you could rotate it 45 degrees, and it always works functionally the same. Here, when you're talking about these cheerleader uniform designs, the arrangement of the color blocks and the chevrons and the stripes, if you made it smaller and put it in the center of a uniform, it would no longer have the slimming effects. It wouldn't make the wearer look taller. If you put it on a hat or a lunchbox, it wouldn't have those functions. Sotomayor, but they have put it on those other items. That's their whole point, that they've taken the pictorial design and applied it not just to a by the way, this is not conceding, I don't think, by them. They'll talk on their own and tell me that this isn't obvious, and some of your amici briefs seem to take that position, that if all we're looking at is a picture of this color blocks and stripes, that it may be too obvious to qualify for copyright protection or not original enough, whatever. But my point is that they already have done that. They've taken the designs and not put it on a cheerleading uniform. They've put it on sweats. They've put it on both tops and bottoms. So what does that do for you? Let me respond to both of those points, the obviousness second, first the other garments. To the extent they're putting it on other garments, if you look closely at those pictures, the design changes. It's not the same design anymore. And to the extent that it remains similar, it's because, for example, the warm-up jackets are putting those lines in the same place. So the great example of this is on page 21 of the Frommer and Bukofusco brief, where it is the Stella McCartney dresses on Kate Winslet. And she's got those slimming dark lines along the sides that change how she is perceived. It makes her shape look different to someone who's looking at her. And the lines on these uniforms do the exact same thing. Similarly, you've got in these uniforms, you've got the waist-narrowing Vs on the sides. It creates the optical illusion that the wearer is thinner than they actually are, slimmer. You've got the Mueller-Lyer lines that Fuller and Bukofusco describe. Sotomayor, under your use of utility, under your definition of utility. Every form, I suspect in most cases, every form gives something else an attractiveness to the purchaser. That's why you have designs of anything, even pictorial designs. Burschelgauer We completely agree. And that's why it's so important that you focus on the statutory text, because under the Exists Independently requirement that we cite, this is right from Section 101, the feature cannot add to or change the utilitarian aspects of the useful article. So let's say that I've got a T-shirt with a happy face on it, and maybe that makes me look better because I appear happier. Well, that design has the same effect whether I'm wearing it on my shirt, my pants, my hat, or carrying it on my notebook. But here, these designs only work when they're on the article for which they were designed in the exact place where they were designed. Kennedy Suppose you have a Picasso painting or Modorin or Klee, and suppose they're alive, and they licensed the use of their picture on a garment, and it does just what you say, this Picasso painting or Modorin just completely captures the shape of the article you want. The fact that it completely captures it means that it can be copied? Burschelgauer No, it does not, because the Picasso painting can be copied. Kennedy What's the difference in Modorin or Picasso in these lines? Burschelgauer Because I could take the Picasso and I could just have it in a frame on the chest or I could expand it to the entire breadth of the uniform. With these designs, it has the sidelines have to be right here, the V's have to be right here, the Mueller-Lyer line has to be right here. And if you would move it, say rotate that 45 degrees, you could do that with the Picasso and it would still look like a Picasso. If you turned one of these designs 45 degrees, it would no longer make the cheerleader look taller and thinner. Kagan How is your argument different from this tuxedo shirt that the government  It's on page 10 of the government's brief. Burschelgauer Yes. Kagan Where the lines really do have to be just in a particular place on the piece of apparel in order for it to make any sense at all? And there, that was found to be copyrightable. Is there any difference between the tuxedo shirt and this? Burschelgauer Well, there are differences. And I think even the government would tell you if you asked them that question that that design wouldn't prevent you from making the tuxedo. And what we're talking about here is making the cheerleader uniform, the actual three-dimensional cheerleader uniform that you wear. And that's the lesson of one section or section 113 in Jack Adelman. Kagan No, but it prevents you from making this T-shirt with these lines on it in the same way that you're saying nobody should be able to make a short dress. Burschelgauer Right. And the point Kagan With those particular lines in that particular place. Burschelgauer The point is you can have a copyright in that design. We don't contest that Varsity has a copyright in the design. We wouldn't contest in the hypothetical I used with Justice Ginsburg, you could have a copyright in the camouflage design. But that copyright doesn't extend to prevent you from making the useful article depicted. That's where the line stops. Roberts So I guess I'm not sure, but does that mean if you can have a copyright in the tuxedo shirt design that somebody couldn't draw a tuxedo shirt because that's copyrighted, two-dimensional? Burschelgauer Right. Right. You could not replicate the design, but you could make the tuxedo. That's the lesson of Jack Edelman in Section 1. Kagan But you're saying you couldn't make the tuxedo shirt. Is that correct or you could? Burschelgauer You could not. Let's take it back to the cheerleader uniform and then bring it back to the text of the statute. We don't contest that Varsity could take these designs and put it on a notebook, put it on a lunchbox, put it on a hat, and no one could copy that. That's clearly within the subject matter of their copyright. What they can't do is prevent someone from making the entire uniform. And the reason the statute requires that is because you have this identified separately requirement.  Sotomayor Are you suing them just for the pictures that are in their catalog? Is that what you're suing them for? Burschelgauer We're not suing them. They're suing us. Sotomayor I'm sorry. You're right. I apologize. So can you get you could stop them from using their pictures of their uniforms in their catalog. Burschelgauer No. Sotomayor But you can't stop them from selling their. Burschelgauer We can't stop them from using their copyright to do anything on a printed page or even to take these designs and, like I said, put it on a lunchbox or a notebook. But their copyright does not. Sotomayor I transpose the two of you. I apologize. Burschelgauer No problem, Justice Sotomayor. Sotomayor Are they stopping you from do you think you can sell your uniforms anywhere? Burschelgauer Correct. Sotomayor So what can't you do? If we don't agree with you, if we agree with them that this is a eligible for copyright absent some other disqualification like obviousness or lack of creativity or whatever else, okay, assume we agree with them, what can they stop you from doing? Burschelgauer Well, actually, if you agree with them that they have a copyright, then you're agreeing with us, too. Because we all agree they have a copyright in the sketch. Sotomayor Okay. Burschelgauer They have a copyright in the image. Our position is that they cannot then take that image and prohibit us from making the actual three-dimensional uniform. And the reason for that under Section 101 is because the design neither can be identified separately nor can exist independently, which are the statutory requirements, of the utilitarian aspects of the cheerleader uniform. Kagan So but if I could just go back and make sure I understand my question about the tuxedo shirt. Burschelgauer Yes. Kagan So if I have a copyright in the design of the tuxedo shirt, not in a tuxedo  Burschelgauer Correct. Kagan ---- I have a copyright in the design of a tuxedo shirt, can I prevent other people from manufacturing tuxedo shirts? Burschelgauer Yes. Kagan So why isn't that exactly the same? Burschelgauer Because when you're ---- Kagan Because here I have a design in a copyright dress, and now I'm trying to prevent other people from manufacturing that cheerleader dress with that design. Burschelgauer Because then that's like manufacturing the tuxedo. And what one ---- Section 113b says is that all of the copyright law with respect to this kind of issue, that was ---- Kagan I don't understand why it's like manufacturing a tuxedo. It seems as though it's like manufacturing the thing that I have the design in. Kagan So you can't make a tuxedo shirt. I have a design in a cheerleader dress, so you can't make the cheerleader dress. Burschelgauer It has to do with the very careful statutory requirement that they exist independently. What that means is the feature can't add to or change the utilitarian aspects of the article. When you're talking about the tuxedo design, it's not adding anything functional to the T-shirt. It's simply putting a design on it. When you're talking about these designs on a cheerleader uniform, it advances a number of utilitarian designs. And let me just tick those off quickly. First, it changes how the wearer is perceived through optical illusion. And that's some of the things that I've been referring to, the slimming lines on the side, the waist-narrowing Vs, the muter lion lines. Ginsburg Is that the same for all five of the interchangeable? Burschelgauer For all five. And I'll tick through this list, and then let's look at the uniforms, and I can show you how they do that. The second, like all uniforms, Justice Kagan, it actually identifies the cheerleader as a cheerleader, which was Judge McKeague's point, Judge Cleland's point below, because if these cheerleaders were wearing wrestling singlets, no one would identify them as cheerleaders. And uniforms have a special identification function. You think about military people who are in a scene mixed up with civilians, and it's the military uniforms that identify them as members of the military that tells you whether the rules of war apply to them or not. Ginsburg I thought conveying information doesn't make an article useful. Burschelgauer I don't think that optical illusions are conveying information. I don't think that identification is conveying information. Ginsburg You said a function of the cheerleader's dress is to identify the person as a cheerleader. Burschelgauer Yes, that's a second function. So let me first make clear, the optical illusions isn't conveying information. It's actually causing you to see the person differently than they actually are. So at a minimum, that doesn't fall within this. I think with the identification, that allows you to sort people. That's different than conveying information like facts and figures. In addition, Your Honor, the conveyance of information is actually something that has to be considered as part of the exists independently prong. And you can see this on page 2 of the blue brief, where we have section 101, both the pictorial, graphic, and sculptural works definition and the useful article definition. And if you start with the useful article definition, to determine whether something is a useful article in the first instance, you ask whether it has an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. So portraying the appearance and conveying information are utilitarian functions. But if that's the only thing that they do, then it's not a useful article. But once you've decided that a garment, like a cheerleader uniform, is a useful article, now you turn to the separability test. So now we look at the PGS definition right above the useful article definition, and there you're measuring the features against the utilitarian aspects of the article. It doesn't say only the intrinsic utilitarian functions. It's any utilitarian aspect. So having made the first decision, yes, this garment is a useful article, the statute requires us to consider all the utilitarian aspects of the article, and that has to be the case. Or otherwise, again, military uniforms, their identifying function, you could have laypeople making military uniform designs and barring the government from ever being able to manufacture those uniforms themselves, even if everyone agrees that that is a useful thing. Two other quick things on functionality. These designs also define the uniform's style line and their actual three-dimensional shape. So Justice Kagan, the zigzag that they have on the bottom of 299A and 299B on page 4 of our blue brief, it's actually defining the shape. And everyone agrees that the shape of a uniform can never be copyrighted. There's no dispute about that. The last thing. Ginsburg-Miller I thought that the shape was the same on all of these. We have different designs, five different designs, same shape. Bursch No. Maybe this would be a good time to turn to the pictures on pages 4 to 5 of the blue brief, because these are the actual copyright deposits involved. And what you can see, I'll give you a moment to pull up pages 4 and 5 of the blue brief. On page 4, you have two of the deposits. This is 299A on the bottom, 299B on the top. And that zigzag actually defines the shape. And it also has the functional utility of covering up the seams and making that waistband stronger, not allowing it to stretch when the cheerleader puts it on and off. The stripes at the top that define the shape of the collar, again, that's not copyrightable, also cover up seams. That stripe that goes across diagonally right there, that separates the white color block from the red color block, those two color blocks have to be stitched together. And what they do is they put those stitches on the outside so that it will be smooth on the inside where the cheerleader is, and they have to cover up those seams with a stripe. So all of these things are functional. So now let's look at the other. If it's sublimated, which is something that they've talked about, it's no different with respect to the optical illusion or the identifying function, because if you print the same design on a cheerleader uniform, you'd have to print it exactly the same way they stitch it. Let's focus now on page 5. The bottom drawing there is number 815. This is the red one with the blue stripes that go down the side. It's those blue stripes on the side, just like the Stella McCartney dress, that caused   Sotomayor, I go back to this point because I'm a little confused. You started by saying to me, you don't want to be stopped from manufacturing this particular uniform. Correct. What do they – what do you think they have a copyright in? They have a copyright. Or what do you think is eligible for copyright in this picture? I think the copyright eligibility in this picture is the design, so long as it's not being used to prevent the manufacture of the useful article that it was intended to be – to appear on. Like I said, they – Well, I think isn't that the government's position, too? Well, I think they agree with us on that point. On that point. Yeah. If you look at page 22 and 23 of their brief, they have our little black dress, and then they have this very design here, number 815. And they explain that if we're right, that this design has functionality What can't you do, assuming that you accept what they have a copyright in, sort of the – this thing, but not in stopping the manufacture of the uniform? Yes. What do you think their copyright stops you from doing? Everything else. We could not print this on a notebook cover. We couldn't put it on a lunch pail. We couldn't put it on a hat. The only thing it allows us to do is to actually produce the useful article itself. And I'm talking so much about cheerleader uniforms. I want to focus back on the text just for a moment, because the purpose of having a separability test under Section 101 is to make sure that anything that enhances in any way the functionality of a useful article is not within the subject matter of copyright. Well, I guess that's the question. Is it really in any way? Because the opposite way of reading the statute is that the utilitarian aspects of the article that you're talking about in terms of the separability test, that those utilitarian aspects should be understood to encompass only the utilitarian functions that make something a useful article in the first place, which means that they should be held to exclude things that relate to the portraying the appearance of the article or things that relate to conveying information. And that seems to me a pretty good – I mean, it's a confusing statute, but it seems to me a pretty good holistic understanding of this statute that that's what the statute is trying to do, is to say there are certain kinds of things that might in a broad sense be considered utilitarian, which has to do with portraying appearance or conveying information, that for this inquiry, we want you to exclude, that the separability test does not relate to those kinds of things. Bursch, and Justice Kagan, that would be a possible policy that Congress could have adopted, but that's not what the statute says. When you're applying the separability test, you're comparing the features to the utilitarian aspects of the article, not the intrinsic utilitarian function, not the ones that made it a useful article, but all utilitarian aspects of the article. And if you excluded things like uniforms identifying functions, then someone would be able to prevent the military from producing camouflaged uniforms if they got to that design first. And that's exactly the opposite of what Congress intended. If you know – in fact, there's been a hundred years of proposed legislation where people have tried to get that reaction. Kagan Is the camouflage actually we can understand it as having a utilitarian function that is different from simply conveying information and that is different from simply making something appear a certain way?  In other words, the utilitarian function that camouflage has is to hide you in the woods. And so that function would not be excluded by these things. Bursch Right. But the utilitarian function of the fabric only works – or the design only works in conjunction with the useful article. And the same is true here. When you talk about camouflage, it's creating an optical illusion, right? We've got that picture on page 1 of our reply brief. And when you first look at that, you don't immediately see that there's a person standing in that tree because they are camouflaged. Well, in the same way with these cheerleader uniform designs, it creates the optical illusion that they're taller, that they're slimmer, that they're curvier. You know, all these functions work exactly the same way as camouflage. Breyer Forget the special things. I have a picture of a dress. Now, the dress is in my mind. I've abstracted it. But when I look at those forms in space, it looks like a dress. Bursch Yes. Breyer All right? Now, you'd say, I take it, that when I've tried to identify the design separately, I've ended up with something that is not capable of existing independently of the utilitarian aspects of the dress because it looks like a dress. So when Marcel Duchamp hands a shovel on the wall and says it's a work of art, he can have a copyright as long as he doesn't try to sue people who make shovels. Bursch Exactly. Breyer That's it. Bursch That is the identified separately portion of our argument. Breyer That's your point. That's one of two points. And then if you fail on that, you have all the specialized arguments about special purposes of cheerleader costumes. Bursch Right. Now, the part of your Breyer But the basic argument is what I said. Is that right? Is that right? Bursch Yes, but the part of your description that makes me nervous is when you talk about just imagining something, because that's the side-by-side test that Varsity advances, that you have to just imagine and visualize whether two things can be conceived of as the way they are. Breyer Well, why not? It says separable from. So we look to see if it's separable from. Bursch Right. But what they ignore. Breyer And what else do we have in our imagination? Bursch But what they ignore is that it has to be independent. That means completely separate on both sides of the utilitarian aspects. And so then you lose the utility. You know, they would say under their test that here, because I can conceptualize this uniform separate from the fabric, that that's enough. But it's not, because if that design is doing work on the fabric in the place where it was designed to be, then utilitarian function is lost when you remove it. And that's exactly what section 101 requires. Breyer True. True. Bursch Right. So you have to look not only at the design, you have to look at the article as well. And if the article does less work when that thing is gone, it's not separable. It's protectable. If there are no further questions, I'll reserve the balance of my time. Roberts Thank you, counsel. Mr. Jay. Jay Mr. Chief Justice, and may it please the Court. Congress directed the Copyright Office and the courts to protect applied art as well as fine art. Applied art is art applied to a useful article. And where that directive comes into the statute is in section 101 and in the definition of pictorial, graphic, and sculptural works, and in the substantive provisions that implement that. Now, there are two key directives there which the Copyright Office has faithfully implemented over many years in thousands upon thousands of registration decisions for applied art, and two key principles which the Petitioner rejects. Number one is that this is a hypothetical inquiry capable of existing independently of, can be identified. And the second is that courts and the Copyright Office are not required to get into the question of how effective the visual or artistic expression of the copyrighted work is. Roberts What do you do about the camouflage case? Jay We think that camouflage, the idea of camouflage certainly can't be copyrighted under one of the three. This is a special design, the things are curved one way or another, that nobody else had thought of. Roberts If it's a brand-new original camouflage pattern, we think, although I don't think you need to agree with me about this in order to agree with Varsity in this case, I do think that an original camouflage pattern could be copyrighted and then reproduced on backpacks, iPhone covers, you know, other clothing and so on. Roberts Well, can it be reproduced on a military uniform? Roberts Or a hunter's garb. I think it could, that copyright could extend to that. If that case, if camouflage is not copyrightable in that extent, that's for reasons that I think, exactly as Justice Kagan said to my friend, for reasons having to do with the utility of the camouflage design itself, not of the useful article on which it appears. And in this case, you know, our position is that the graphic designs, the stripes, chevrons and color blocks, they are separable from the useful article on which they appear. Roberts Well, but if you take them off the useful article, you have whatever color the fabric is, a white dress. If you look at somebody in a white dress, you don't say, oh, that's a cheerleader. Roberts Well, respectfully, Mr. Chief Justice, you could have a white cheerleading uniform worn by a cheerleader with the team name and team logo on it. And I think we've given examples of why that is in fact possible. Roberts From the 1950s. Roberts Well, you could have a – if you look at page 34 of the Joint Appendix, you'll see in Starr's own catalog examples of uniforms that have neither stripes nor chevrons nor color blocks. Those simply aren't essential to identifying a cheerleader as a cheerleader, even if identifying were a function that's cognizable under the statute, which it is not. Ultimately, the design can be taken and put on other articles. It could be put on, you know, as I said before, an iPhone cover or on the warm-up jackets, warm-ups and jackets that are reproduced in the Joint Appendix. And I don't know if the other – your friend on the other side concedes that those could be copyrighted. If you take the design of a particular cheerleading uniform and put it on the lunch box or the computer cover, yes, those can be copyrighted. But because it is the design that makes the dress a cheerleading uniform, you can't separate – you can't copyright the design applied to that functional article. Well, let me resist the premise, of course, that this particular design or these five particular designs of stripes, chevrons and color blocks are what make a cheerleading uniform a cheerleading uniform. But even setting that aside, if you look at Section 113a, which sets out what rights the owner of a copyright in a pictorial, graphic or sculptural work has, those rights include the right to make copies of it, to embody the design in or on any kind of article, including a useful article. And, you know, what – it would be convenient for Star to have a right that just doesn't extend to the product that they want to make. That is not the statute that Congress enacted. You have the owner of a copyright in a visual work, a pictorial, graphic or sculptural work, has the right to embody it on useful articles. Roberts. Roberts. I think you're avoiding the question. Yes, you can have a copyright in the pattern, and yes, you can attach it to a useful article, like a lunch box that's going to have the design. But the question is, when the design is what makes that useful article what it is. The design on a lunch box doesn't make the lunch box a lunch box. It's still a lunch box. But the design on a cheerleading uniform is what makes it a cheerleading uniform as opposed to a plain dress. Well, I guess I just have to resist the premise that this particular – these particular designs are what make a cheerleading uniform a cheerleading uniform. But if you – I understand you are resisting the premise as applied to your case. But is that right as a general test, that if it is the design that makes the article what it is in its utilitarian aspect, that that cannot be copyright? I think that's exactly the kind of utility that Congress did not write into the statute. That is not the kind of utilitarian function that Congress contemplated. And I think that the best evidence of that is both in the legislative history meeting the House report and also in the Register's testimony about what the Copyright Office had been doing for decades, explaining to Congress in the course of adopting the 76 Act, both the Register and the House report say that virtually all two-dimensional designs applied to useful articles are going to remain copyright eligible. The House report is not the law, right? To be sure, we are not saying that it is. But we are saying that if you look – it's perfectly consistent with our view of what a utilitarian aspect of a useful article is. And we also think that, you know, again, you don't – even if the House report had not said, we are intending to codify this Court's decision in Mazur and the Copyright Office practice, this Court, I think, would have presumed that Congress was doing so. Here, I think that presumption is amply justified. Roberts, so you are saying that the cheerleading uniforms do not serve a utilitarian purpose? We are saying that they don't serve the utilitarian purpose – that the purposes my friend attributes to them are not utilitarian aspects of the article under the statute. They certainly are utilitarian. They cover the body. They, you know, they provide mobility. Sotomayor, does every university that contracts with you know that they have to buy their uniform for you – from you for 99 years plus whatever? Every university that you sell these cheerleading uniforms to, do they know that under your copyright they are stuck with you forever? Well, no, Justice Sotomayor, that is not the case. Why not? If you have a copyright on this design and they have adopted their school colors, orange and black, and I presume some of these are cheerleading uniforms belonging to certain teams, they buy them and they put their names on them, correct? Cheer schools certainly put their names on cheerleading uniforms. So why aren't they stuck with you being their only supplier of their school colors for the rest of their existence? There are many, many, many variants available, you know, both copyrighted and uncopyrighted, you know, variants of cheerleading uniforms that, you know, Varsity and its competitors can sell. Again, there are examples in the Joint Appendix, you know, at the page that I referred to. So I'm right. Once a school – you design a uniform for a school, that's it forever. Well, respectfully, Justice Sotomayor, if we design this particular combination of elements, then we do own the – we do own a copyright in that combination. But we don't own the idea of an orange and black cheerleader uniform or a black and yellow cheerleader uniform. Breyer. No, but the point, the question is, I think, if I – because I have exactly the same question, it starts with the premise that everything has design. Some really – a lot of that set can be copyrighted. All women's clothes have design. All men's clothes have design. For a hundred and more than that years, the fashion industry has not enjoyed copyright protection. It is an industry on the women's side, I believe, that $225 billion at least worth of clothes are sold every year. If suddenly in this case we say that dresses are copyrightable, and they are because every one of them has some design, perhaps we'll double the price of women's clothes. Now, if that's – that's, I think, the thrust of the question, and that is a practical question. I also have a conceptual question, which I'd like to ask, but why don't you disabuse me of my notion that we are into monopoly big time? Absolutely, Justice Breyer, because, you know, Justice Sotomayor's question was about the particular pattern. And mine is about all dresses, all clothes, all suits. You're killing – you're killing knockoffs with – with copyright. Well – You haven't been able to do it with trademark law. You haven't been able to do it with patent designs. We're now going to use copyright law to kill the knockoff industry. I don't know that that's bad. I'm just saying. So let me clarify at the outset. We're not claiming the shape, the cut, or anything like that about – about these garments. Look at page 60 of our brief, and you will see cataloged all the places where we set out what our registration is in. It's in the two-dimensional artwork that appears on the surface. So that's why I'm asking you to disabuse me of my notion that we are into monopoly big time. Breyer, I see it here, and as I look at it and cut away the limbs, I have left – this is page 22 of the S.G.'s brief – what I have left is I have left the S.G.'s brief This is the design you're after. It is a two-dimensional design that looks to me very much like a dress. It looks very much like a two-dimensional picture of a dress that covers a woman's body. Now, that's what you want at copyright, that thing. Absolutely not, Justice Breyer. It's not? So do you have a different design here? Then we're not talking about – about figure 8. We're not talking about figure 8? Our design in figure 8, if you look at the registration that corresponds to that figure, which you will find in the joint appendix at 46, you will see that the registration is for two-dimensional artwork. Of course. It's a two-dimensional – look, I can do a two-dimensional artwork that looks like a Rubik's cube. I mean, a two-dimensional artwork can look like a three-dimensional thing. No, but it's the two-dimensional artwork that appears on the surface. It is not – it's not that we did a two-dimensional picture of a dress and said, now we own the dress. You didn't say you own the dress. Correct. What you said is you own the design of the dress. No. Now, isn't – you don't? No. We say that we own the design that appears in that case on the dress, but that can also appear on the warm-ups. It can also appear on the jacket. So you own even more. Now, wait. I have a conceptual question. I'm not yet satisfied with your answer to the practical question, because I fear that any good designer or lawyer could go and take any dress or suit just about and produce a picture that looks very much like that, and then sue the companies that use the same dress or style. That's my practical, but this is the conceptual. Since we can take – since we can take anything, anything to a two-dimensional picture and put it on the wall like Marcel Duchamp, if I decide in your favor, am I not allowing copyright for virtually, assuming other things satisfied, every design of a piece of clothing that they did not want? No, absolutely not, because the ability to take the shovel and hang it on the wall does not make the shovel a sculpture, because the things that make – the utilitarian aspect – I'm not talking about the shovel at the moment. I am talking about an artist's ability to take a piece of clothing, which is a utilitarian object, and do a two-dimensional picture of the piece of clothing, which – and have some things on it, some chevrons, or nothing. It just looks like a dress. Now, on your theory, does that not become copyrightable? Only in the surface design, not the folds, not the pleats, not the shape, not the cut. And my friend agreed, Mr. Chief, can I just say one thing? As to the surface design, I have a similar question. But suppose I go to a museum of modern art, and I look at a great many famous abstract paintings. I assume that you would say that all of those could be copyrighted, could they not? You know, if they're original and meet the other requisites, one assumes so, yes. And so the design on any fabric potentially could be copyrighted, could it not? The surface design – If it was – if it began as a painting? The owner of the copyright in that painting has the right to reproduce it on fabric, on other textiles, you know, or, you know, on a tapestry, on a rug, or on wallpaper. Absolutely. And isn't it – just starting from the premise that Justice Alito suggested, the fabric designs are copyrightable, is that correct? That's what I was starting to say, Justice Kagan.  My friend agreed that fabric design is copyrightable. So it seems to me that the question, right, in this case, is are you going to treat this kind of design just as you would a fabric design? That's right. And as I understood Mr. Bursch's point, what Mr. Bursch is saying is, no, you shouldn't, because this kind of design has its – it follows the figure of a human body, essentially. And that's the difference between just a design of, like, stripes and zigzags and chevrons sort of abstractly, and then one that's put on something that looks like a particular piece of apparel that's meant to fit onto a human body in a particular way. And that seems to me to be the distinction he's making, and I want you to tell me why that distinction, in your view, doesn't make a difference. It doesn't make a difference because what he's – he's identified a number of different supposed utilitarian aspects, and some of which, I think, actually go to the fabric of the dress and we're not – or of the uniform, we're not laying claim to that. What he's talking about are the visual ones, the ones that make the cheerleader look a particular way. And he's saying that you can't copyright those as applies to a cheerleader uniform because they're especially useful there. Like, that's where they are most effective in conveying this image. We think that is not what the definition of utilitarian – the meaning of utilitarian aspects encompasses, because any work of visual art conveys a, you know, a visual message or, you know, or an aesthetic impact. And to have the ones that are most effective be least copyrightable we think doesn't work. And I think that at least the difference between that utilitarian argument and the utilitarian argument as applied to camouflage. The utilitarian argument as applied to camouflage is that it's – I mean, as I said to the Chief Justice, we do think that if you see camouflage as portraying the appearance of a particular thing, you know, or sending a message that you belong in a particular group, that would not be copyright eligible. If – sorry, that would not be a utilitarian aspect. If camouflage is not copyright eligible, it's because it performs something that's different from making you look good in an aesthetic way. It's because it conceals. Now, ultimately, we think the best answer is that that's not – Kennedy, but why should that make a difference? Feigin, I mean, the word utilitarian is the key word in the definition. And if I – I think maybe using one of the fine arts examples, you know, might help to illustrate this point. If you look in the amicus brief of Professors Boccafosco and Fromer, they have – their illustration number one is the fresco painted on the dome of a church. And they say that's not copyright eligible because it uses techniques to make the dome look bigger. And now, you certainly can't get a copyright in the idea of trompe l'oeil art, but you certainly can get a copyright in a work of fine art that decorates a room or a rug or a useful – you know, a useful article, and that makes the room look better or makes the person who wears it look better. And the fact that it's effective, that it makes – you know, it serves to make that particular church look bigger, that is not a reason to withhold copyright protection. That's a reason to grant it. Roberts, the argument is not that it makes the room or whatever look better. The argument here is design makes this look like a cheerleader uniform, which has different distinctive function than a normal dress. It's not simply to cover the body. It's to convey a particular message. It shows that you're a member of the cheerleading squad and so on. Well, if that were true, Mr. Chief Justice, they'd have a decent argument under the merger doctrine if there were – if there were only a few ways of expressing that you are a cheerleader and that you are wearing a cheerleader uniform. You can't get a copyright in an idea. That's 102B. The merger doctrine, not this utilitarian separability analysis that we've been talking about, the merger doctrine is the primary way in which courts and the Copyright Office can, you know, prevent the owner of a copyright from locking up the ways of expressing a particular idea. So that – if on the facts there were only a couple ways of looking like a cheerleader, that would be the way to get at that. Of course, that's not the case. Kennedy, you're certainly wrong to say. Kennedy, under your argument and as you best understand your colleague's argument, to what extent are there findings of fact involved here? I mean, are we the ones that decide this? You wanted to introduce expert testimony. What was the expert testimony you wanted? The other side wanted to introduce expert testimony, Your Honor. The Petitioner told this Court at page 40 of the petition for cert that this is a pure legal question. We agree that under the correct analysis it is a pure legal question, but we think that's a real vice of the other side's view, that they are asserting, you know, essentially as a matter of law, that certain things are necessary to be a cheerleader, that certain things are influenced by function or form. Roberts, You just said that. You said there are a lot of other ways to show that somebody is a cheerleader. And, you know, maybe I started to try to think of them, and, you know, it's not just that they all look alike. So maybe that's one area in which you have testimony, that 95 percent of the cheerleading squads look like this. So maybe there aren't other ways. Well, ultimately, the question is the hypothetical question whether this design can be identified separately from the articles in which it appears and whether it has an existence separate from those articles. And I think this design And when you say this design, I'm sorry, Mr. Kennedy. When you say this design, just to make sure I understand what you're claiming copyright in, so if I'm looking at page 4 and there's this design with a blue stripe and a white stripe and a red stripe and a white stripe and a blue stripe, could somebody else come along and just add another red stripe to that, and would that you then say you violated our copyright? Our copyright is in the arrangement of the design elements. The particular arrangement. So if somebody just added a different, another stripe. Well, adding another stripe is, I hesitate to agree with, because usually reproducing a copyrighted work and then adding some stuff around it is not enough to avoid infringement. But if they changed the colors and reordered the elements, I think they'd have a good argument that it's not infringing. Thank you. Roberts. Thank you, counsel. Mr. Feigin. Feigin. Thank you, Mr. Chief Justice, and may it please the Court. This case is about the reproduction of two-dimensional artwork on a useful article. The question here is fundamentally indistinguishable from the tuxedo shirt that my friend conceded would retain copyright protection, or putting a sports team logo on a T-shirt that identifies somebody as a team member or a fan. Or putting camouflage on a military uniform. So, Your Honor, camouflage has been protected by copyright for decades. The Copyright Office's practices on that reflect the view that copyright or that camouflage is generally eligible, at least for a very thin copyright, in the creative elements of a particular camouflage pattern that aren't dictated by the underlying ideas and scientific principles that make it work. Even as applied to a military uniform? So as applied to a military uniform, if someone were asserting a copyright in camouflage in such a manner as to prevent the manufacturer of a uniform from actually manufacturing a uniform that would perform a concealment function, and if concealment were, as Justice Kagan was positing, considered to be separate from the sorts of expressive functions that are traditionally protected by copyright, then there might be infringement defenses that would apply in that context. But what I think the dispute in this case is really boiling down to is a question of what the utilitarian aspects of a useful article are. And I think there are two the Petitioner is identifying. One is conveying the information that someone is a cheerleader, identifying someone as a cheerleader. And the other is affecting the viewer's perception of the wearer's appearance. And I'd like to just explain overall the description. Breyer, What about the woman or the man who wishes, and indeed this is a normal reason for wearing clothes, they're making a statement about themselves? They're saying who they are. The clothes on the hanger do nothing. The clothes on the woman do everything. And that is, I think, what fashion is about. Kagan, It's so romantic. Breyer, It has been in history now, isn't that it? Breyer, Well, Your Honor, it is. Breyer, Why do we wear robes? Breyer, Your Honor, it is clear in its common ground among the parties and with the Copyright Office that the actual cut and shape of a garment isn't copyrightable. Breyer, What about Lemley's test on page 17 of his brief? As I read it, as I read it, and I thought, and I'm sure you've read it, and it seemed to me that it does say that a two-dimensional picture of a three-dimensional piece of clothing is not entitled to copyright, because it is not a design of anything but a utilitarian object, the clothes, whether they are beautiful clothes, ugly clothes, cheerleader, or anything else. Kagan, Well, Your Honor, I think I we disagree that you can't take the aesthetic aspects of the cheerleading uniform and put them in a different view. Breyer, But do you agree with Lemley's statement, which I mean, it's such a, all the professors are there, and that's why I thought probably you've read it, and it's from all over the country, and I wanted to get your opinion of it. Kagan, Your Honor, as you've characterized the statement, we don't agree with it. We do think the two-dimensional artwork here is separable from the garment, the cut shape of which is not copyrightable. And let me just make a couple of points. One is about the Act and what it's doing overall. The Act overall is drawing a distinction between the kinds of aesthetic, communicative, expressive functions that are traditionally protected by copyright, and the kinds of mechanical, pragmatic, utilitarian functions that are exclusively the domain of a useful article. And the kinds of functions that Mr. Burse is talking about here are fundamentally expressive functions. First of all, conveying the information that someone is a cheerleader. When someone is wearing a particular piece of clothing intended to convey that they're a member of a particular group or that they hold a particular belief, that is the kind of expressive function that copyright traditionally protects, and indeed, there's an express exception in the definition of a useful article for conveying information. And I think this is indistinguishable from putting a sports team logo on a T-shirt to identify someone as a Washington Capitals fan, for instance. Kagan. But what do you do with Mr. Burse's examples of military uniforms or police officer uniforms, something like that? So, Your Honor, those also are conveying information. Now, if someone were trying to assert a copyright in the design of a policeman uniform in such a way that it turned out there were, say, only a limited number of ways to identify someone as a policeman and a copyright were being asserted to prevent identification of someone as a policeman, then the defenses that we discuss at pages 39 to 40 of our brief, the merger doctrine, the sense of fair doctrine, would apply to prevent what would effectively be monopolization of that idea. So if that were really happening in this case, and there's some reasons to think that's not actually happening in the cheerleading realm and we discussed those in our brief, if that were happening, those defenses would apply. Well, but we also say the Galliano case, that was the casino uniform. Why is that different from the cheerleader uniform? Well, Your Honor, we don't agree with the result in the Galliano case. To the extent there was some sort of unique, two-dimensional element that some casino wanted to put on its uniforms to identify its employees, that artwork would be copyrightable, and just like the cheerleading uniforms in this case. I also want to address the argument that the defense would be a copyrighted I had looked at page 22 of your brief at figure 8, and what I'd seen there when I took the arms away was a picture of a thing that was a picture of the cut and style, and not just a picture of chevrons. And so, but if that's what it is, then you would agree and I would agree that it's not, everybody would agree, I guess it's not copyrightable. The point of figure 7 and 8 in our brief, Your Honor, is that everything you see in figure 7 that's also in figure 8 is not copyrightable. That's the cut and shape of the dress. It's the stripes and the coloration and the lines and the design in this particular arrangement. So what happens if when you look at the picture that they submit to the Copyright Office and try to figure out if it's separable, what you see is a picture of a dress that goes around a woman, which does look like, you know, shape and cut and such? So they have generally checked a box, as they did here, that says two-dimensional artwork, and the Copyright Office understands all they're trying to protect is the surface imagery of the garment, and that they'll register. I do want to address this idea that making the viewer look different is somehow the kind of non-expressive function that is associated with a useful article. And I think that approach would be contrary to congressional intent and completely inadministrable. If you look at page 55 of the House report, you'll see that Congress believed that two-dimensional designs on fabric or on wallpaper would be separable and thus copyrightable. But that wouldn't be true under the approach Petitioner is urging. Under that approach, you'd have to look at a particular two-dimensional design on wallpaper and try to assess whether and to what degree it might make the room look bigger or brighter or smaller or darker. I'm not aware of any scientific, reliable, or consistent way of doing that. Kagan. But, on the other hand, it seems a little bit strange that, you know, take a garment designer who wants to do a design that's – that is slimming, and if you – there are all kinds of structural things you can do that are slimming, and those would not be copyrightable. Correct. Then you're saying that the placement of stripes or color, that is copyrightable, even though the garment designer is really trying to do the same thing through color and through graphic design as he was doing through the shape of the article. So, Your Honor, I definitely think there is a spectrum here, but let me try to explain why I think this is on the expressive side of the line, not the non-expressive side of the line. If I were to wear a shirt that said, please focus on my very nicely toned arms, I've worked very hard on them, I think we'd all understand the message conveyed by that shirt to be expressive and separable from the non-expressive functions that the shirt performs covering my body. Now, what – the kinds of things that we're talking about here are essentially sending that same message, albeit in a non-verbal, more subconscious way, but they're still fundamentally expressive because they're about how the wearer is trying to portray themselves and their appearance to the world. And that's all that's being copyrighted. That's traditionally within the domain of copyright. It is not copyrighting particular functionality. Sotomayor, it's in the domain of copyright to copyright the way people present themselves to the world? The way that someone expresses – the way that someone expresses an idea to the world, in this case, the idea would be how they look, is something that is very akin to traditional expression that's protected by copyright. Again, here we're just talking about two-dimensional artwork. If we were – if we adopted Petitioner's view, the Copyright Office, when it looks at a particular two-dimensional design, would have to figure out what effect it would have in all sorts of contexts on various useful articles, which would really impose – Roberts The whole point of the case is we're not just talking about two-dimensional artwork. We're talking about two-dimensional artwork applied to a – the fabric in a way that conveys a utilitarian function. It's not just the two – your friend concedes that if you want to put a picture of this on a lunchbox or whatever, that you have a copyright in that. It's only when you apply it to a garment, because it is what makes that garment a cheerleading outfit as opposed to somebody else, it serves that utilitarian function, that you don't have a copyright. Feigin. And I think our fundamental disagreement is whether this is actually performing utilitarian functions, if I could just finish my response. And I think one – I think one problem with the approach you've just articulated is it really divorces Section 101 and Section 113a, because you could get a copy right in the illustration, and then he would say it's not copyrightable in certain applications, and that doesn't make much sense. Thank you. Roberts Thank you, counsel. Mr. Bursch, six minutes. Bursch Thank you, Mr. Chief Justice. I want to start with that final point that the government makes, that if you had a statement that said, look at my arms on your shirt, that somehow that would be conveying  That's not what this is doing. No one is saying, look at my arms. Like with camouflage, you're not saying, look, you can't see me. The camouflage is actually doing work when it's put in connection with the garment that it was designed for. That's the point. And on that point, Justice Kagan, I just want to make clear about the functionality that we're claiming here with respect to these designs. It's not just that the lines follow the figure of the human body. It's that they actually make the human body appear to look different than it would if they were not wearing those designs. It's just like camouflage. Sotomayor I mean, the colors are just colors. You can what he's saying is you can achieve the same thing with probably most colors and stripes and whatever else is in these designs. Bursch Well, they're not claiming copyright in the colors. They can't. They're claiming the arrangement. And I would say even as to color, this Court in the Qualitex case, that was a trademark case, you said that black, the color black, has the ability to make a motor look smaller than it actually is. It has a function that makes it ineligible for trademark protection. And really, that's the same thing that we're talking about here, that you can use  Sotomayor If you're going much further, you're now saying that any – then you're saying there's no copyright on most things.  Oh, no. We're saying – Sotomayor On most pictorial representations. Bursch Yes. Sotomayor They can always be applied in a way that has a function. Bursch That's not correct, because if you took the sports logo that the government mentioned, that's a perfect example of something that doesn't require the garment for its functionality, because just like we were discussing earlier, you could take the logo and you could put it on your hat or your socks or your lunch pail or on your mitten that you hold up when the folks hit the home run, right? Because it doesn't have – it doesn't rely at all for the article in which it's appeared for its functionality. But here, these designs rely entirely on the fact that certain kinds make you look fatter. Bursch Right, exactly. Sotomayor So you're saying none – even if you find a color rainbow of some weird elk, that could never be copyrighted, because – Bursch They could have the copyright in the two-dimensional design, but if there was an application where it would create functionality when paired with a garment, then, yes, their copyright would not extend to prevent – Sotomayor One of the pictures in the – Bursch Right. That's a much closer case than this one. For starters, if we're walking through the analysis, first you look at the identified separately. And here, when you look at the arrangement of the stripes and the color blocks and the chevrons, you see the cheerleader uniform. And this is Justice Breyer's point about page 17 of the Lemley brief, right, that the aesthetic elements exist only as part of a cheerleader uniform. There's nothing to extract. That's why this case is different than the Gorilla case. So then what you have to ask is if the T-shirt in that case was less functional without the design. And I think that's a close call. But this case is like the camouflage, because it's doing the work of changing the way the body is perceived, just the way camouflage changes the way the body is perceived, and just like military uniforms, having an identifying function, which is extremely important. So I bring this all back to what the Chief Justice said. Isn't it the test, if it's the design that makes the article what it is, then you can't copyright it. And I would say that that's almost exactly right. They can copyright the design and prevent reproduction of the two-dimensional design on the notebook or the lunchbox. But if it's the design that makes the article what it is, you can't prevent the same texture. Ginsburg. How do we decide that it's the design that makes it what it is, as opposed to the cut of the garment, the shape, the pleats or whatever, the tightness of the top? Why should we say that this two-dimensional design, which could be put on many things, is what makes this article utilitarian?  Well, here, it's more than just the shape. If we go back and look at each of these. Ginsburg. But everybody agrees that the shape, the cut of the dress, that the garment itself is not copyrightable, right? Correct. Everyone agrees. So we're talking about the design. Yes. So why isn't this close to a fabric design? Because, again, the fabric designs work anywhere, anyplace, no matter how you move them. If we're looking at page 5 and you've got the waist-narrowing Vs, which are not the shape of the dress, but they make the illusion that the shape of the dress is cutting in to make you slimmer, those only work in that particular place on this article. If you put those on the lunchbox, they don't make the person look narrower. They don't even make the lunchbox look narrower. The designs, the shape of the designs work just like the shape of the garment itself. And that's why this is different than that flowered print that we were talking about in the Folio case. You know, in conclusion, I want to go back to what Justice Breyer and Justice Sotomayor said, that if you recognize that their two-dimensional copyright extends to prohibit the manufacture of actual three-dimensional cheerleader uniforms, then you're giving them a 100-year of copyright monopoly, and that school can't go anywhere else. And that's really ironic, because you have to keep in mind that the school just goes to somebody who puts a zigzag where the chevron was, or a chevron where the zigzag was, or makes it a couple of different colors, or adds another stripe. I mean, there's this my clerk found, I'm sorry, just add that. Roberts, you can. I'm done with my question. Yeah. As my friend on the other side said, it would still be a copyright problem because they would claim that it was too close to the original. And you can see from the last two pictures that we have in our reply brief that there are only certain places that these stripes and chevrons and color blocks can go, or otherwise it doesn't look like a cheerleader uniform anymore. It doesn't identify the person, certainly doesn't have the slimming effect, the making taller effect, and all the other things that camouflage do. So we respectfully request that you not grant a 100-year copyright monopoly in design.